[Cite as *Foster v. Benson*, 2019-Ohio-1528.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EROL FOSTER                                     :

    Plaintiff-Appellant,            :

                                   No. 107366

    v.                              :

ANGELA BENSON, ET AL.,                          :

    Defendants-Appellees.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, MODIFIED IN PART,
                   AND REMANDED
**RELEASED AND JOURNALIZED:** April 25, 2019

---

Civil Appeal from the Cleveland Municipal Court
Case No. 2016 CVG 11394

---

### *Appearances:*

Mike Heller Law, L.L.C., Michael A. Heller, *for appellant.*

Angela Benson, pro se; Dwayne Thomas, pro se, *appellees.*

MARY J. BOYLE, P.J.:

{¶ 1} Plaintiff-appellant, Erol Foster, appeals from the trial court's judgment granting defendants $8,000 in damages and court costs. He raises 12 assignments of error for our review:

    1. Plaintiff/Appellant was denied due process.

2. The trial court erred in failing to record the proceedings before the Magistrate (hearing of 09/14/2017).

3. Magistrate's Decision (of 09/27/2017) is/was against the manifest weight of the evidence.

4. The trial court erred in the failure of adequate proof of damages by Defendant/Appellee(s).

5. Trial Court erred in finding that Plaintiff/Appellant Foster allegedly sold her 2 couches to a neighbor.

6. Trial Court erred in finding that Plaintiff/Appellant Foster had allegedly thrown out Defendant/Appellee(s)'s [sic] belongings.

7. Trial Court otherwise erred in finding that Plaintiff/Appellant had "removed" or "taken" Defendant/Appellee(s)'s [sic] belongings.

8. Trial Court erred in referring to 'Defendant/Appellee(s)s' [sic] in the plural, including but not limited to, arbitrarily awarding judgment to both Defendant/Appellees, and, in dismissing Plaintiff/Appellants' claims against both Defendant/Appellees.

9. Trial Court erred in finding that Plaintiff/Appellant had locked Defendant/Appellee(s) out.

10. Trial Court erred in finding that Plaintiff/Appellant Foster violated ORC 5321.15.

11. Trial Court erred in finding that Plaintiff/Appellant Foster committed the tort of conversion.

12. Trial Court erred in failing to assign a dollar amount of damages to the alleged tort of conversion and/or to itemize damages therefor.

{¶ 2} Finding partial merit to Foster's eighth assignment of error, we affirm in part, modify in part, and remand for the trial court to issue a journal entry only awarding Angela Benson $8,000 in damages on her counterclaim against Foster

and omitting an award of damages to Dwayne Thomas. (Benson and Thomas are collectively referred to as "defendants.")

## I. Procedural History and Factual Background

{¶ 3} On August 11, 2016, Foster filed a pro se complaint in forcible entry and detainer and for money damages against the defendants. Foster alleged that he owned a residential property located at 3255 East 117th Street in Cleveland and that he rented the property on a monthly basis to Benson and Thomas, but that they failed to pay rent at the beginning of August 2016. Specifically, Foster alleged that Benson and Thomas "agreed to pay [Foster] rent for the premises in the amount of $600.00 per month" and that they "failed to pay plaintiff rent for the period from the 1st day of August 2016 until the present[.]" Foster also alleged that he served Benson and Thomas with a written notice to leave the premises on August 5, 2016. Foster said defendants owed him $600 "plus $30 per day until [they] vacate * * * the premises" as well as "$300.00 for property damage" and "court filing fees and legal fees." As a result, Foster sought "$950.00 plus $30.00 per day until defendant[s] vacate[] the premises."

{¶ 4} Foster, this time with representation, filed an amended complaint on September 1, 2016, adding a new third-party plaintiff, Foster EM Family Trust.[1] The amended complaint included the same allegations, but asked for money damages in

---

[1] Hereinafter, Foster and Foster EM Family Trust are collectively referred to as "plaintiffs."

the amount of $5,000 for "property damage, delinquent rent, * * * and other," as well as $30 per day until the defendants vacated the premises.

{¶ 5} The magistrate set a hearing for the matter, but continued it for lack of service of the summons and complaint on defendants. After resetting the hearing, the magistrate again found that service was not perfected.

{¶ 6} In October 2016, Benson filed an answer, denying the allegations. She alleged that "Foster change[d] and bolted the locks and doors [and she] was unable to get into our home as of August 2016 so I don't owe any rent[.] Couldn't get into home." Benson also filed counterclaims against Foster for damages "for illegally moving all our property out [of] our home on October 17, 2016." She alleged that "we never got any notice based upon eviction[.] When I got the call I called eviction court and they gave us a date stating they made several attempts but we never got any mail since July[.] Our court date was [November] 9, 2016." She also alleged that Foster "paid for dump trucks called 'Pete and Pete' and trash[ed] all our belonging[s] and we lost everything without being evicted. [A]lso for lost wages." She therefore requested a judgment for $8,000 plus costs.

{¶ 7} Thomas did not file an answer.

{¶ 8} In December 2016, plaintiffs moved to strike Benson's answer and counterclaim for failure of service. Plaintiffs argued that Benson's alleged service on Foster was inadequate because she should have served plaintiffs' attorney who appeared on his behalf and represented him when the amended complaint was filed. Foster also argued that he never received Benson's answer and counterclaim.

**{¶ 9}** The trial court denied plaintiffs' motion, but granted plaintiffs "leave to plead until January 27, 2017 to file a response to [the] counterclaim." Plaintiffs did not file a response to Benson's counterclaim.

**{¶ 10}** The case proceeded to trial in September 2017, but plaintiffs failed to appear. Benson appeared pro se and submitted a list of items that she alleged were lost or destroyed as a result of Foster's actions. That list was marked as Exhibit A.

**{¶ 11}** On September 27, 2017, the magistrate issued a decision, making the following factual findings:

> Plaintiff Erol Foster entered into a rental agreement with Defendants for property at 3255 E. 117th St., Cleveland.
>
> In July 2016, Defendant Benson asked Plaintiff Foster to change the locks at the property because of a problem with a neighbor.
>
> Defendant Benson was residing with her mother and preparing for her wedding and so did not press Plaintiff Foster on the question of getting a key; she was able to enter the property through a window to retrieve belongings she needed for her wedding.
>
> Defendant Benson told Plaintiff Foster that she planned to come to the property with a moving truck to move out all her furniture and her belongings, again asking for a key.
>
> * * *
>
> The first cause hearing was then set for September 29, 2016; on that day, it was continued due to lack of service on Defendants of the summons and complaint. The Court set the case for October 12, [2016] but service again failed.

On October 17, [2016], Plaintiff Foster, without having any authority from the Court allowing him to do so, removed almost all of Defendants' belongings from the property. Defendant Benson discovered that he had sold her two couches to a neighbor and had taken or thrown out almost all of her belongings, a true and accurate list of which she offered into evidence as Defendant's Exhibit 1.

The cost to Defendants to replace lost belongings will be greater than $8000.

Defendants are also entitled to damages for the disruption and inconvenience of being locked out and losing their belongings but since their damages are already in excess of their prayer amount, the Court makes no finding as to the dollar amount of these damages.

{¶ 12} The magistrate stated that "Plaintiff Foster knew that he had not obtained a judgment of eviction and knew that Defendants had no intention of abandoning their personal property" and that he "therefore violated R.C. 5321.15 and committed the tort of conversion." The magistrate also found that "Defendants did not provide testimony that Plaintiff Foster EM Family Trust had any role in removing their belongings." As a result, the magistrate granted "judgment to Defendants against Plaintiff Erol Foster in the amount of $8000 plus court costs" and "with interest from the date of judgment." It also dismissed "Plaintiffs' claims with prejudice as a sanction for Plaintiffs' failure to appear for trial" and dismissed "without prejudice Defendants' claims against Plaintiff Foster EM Family Trust."

{¶ 13} On September 27, 2017, the trial court adopted the magistrate's decision granting defendants $8,000 "plus court costs with interest from the date of

judgment[,]" dismissing defendants' claims against Foster EM Family Trust, and dismissing plaintiffs' claims with prejudice.

{¶ 14} On September 29, 2017, plaintiffs filed a motion for leave to file an answer. Plaintiffs alleged that "[a]pparently by excusable neglect[, they] inadvertently did not answer Defendant's counterclaim." They also argued that the "Magistrate's Decision * * * on or about Sept. 27 must be stricken, and a new trial must be set." Shortly after, plaintiffs also filed a "Motion for audio recording & exhibits, etc." requesting evidence presented during the September 14, 2017 hearing.

{¶ 15} The trial court denied plaintiffs' motion for leave and vacation of judgment. The trial court also denied plaintiffs' motion for audio recording, stating that "the Court did not make an audio recording of the ex parte trial."

{¶ 16} On October 11, 2017, plaintiffs filed objections to the magistrate's decision. Plaintiffs attached an affidavit from their attorney, an affidavit from plaintiffs themselves, a copy of a list of property that Benson lost and produced at trial, and a copy of a failure of service notification from the Cleveland Municipal Court showing that service was not perfected on Benson. Plaintiffs also subsequently filed a motion to stay execution and strike "Defendant's 'Lien Certificate Request' of 10/10/2017, and the 'Certificate of Judgment for Lien,' entered by [the trial court] on or about 10/16/2017." The trial court did not rule on that motion.

{¶ 17} In its June 1, 2018 judgment entry reviewing plaintiffs' objections, the trial court grouped the objections into four categories: lack of audio recording, lack

of notice of trial date, dismissals with/without prejudice, and factual objections. First, the trial court overruled plaintiffs' objections based on the lack of audio recording, citing Loc.R. 3.08(C) of the Court of Common Pleas of Cuyahoga County, General Division, and finding that there was "no requirement that a [m]agistrate create an audio recording of a court proceeding, once the matter reaches beyond the first cause hearing stage."

{¶ 18} As to the lack of notice of trial date, the trial court stated that because Foster was represented by counsel, counsel, not Foster himself, would have received notice of the September 14 hearing. The court stated that while plaintiffs' counsel "[did] not recall receiving a notice of the hearing[,]" "plaintiff was aware that the April 2017 settlement conference was unsuccessful, and [that] the matter would be set for trial. The trial notice was issued on August 7, 2017 and mailed to counsel on August 10, 2018 [sic], more than one month before the September 14, 2017 trial." The trial court stated that it was "counsel's responsibility to keep apprised of the Court's docket and any upcoming events[,]" and that "it is the responsibility of the parties to review the docket and filings." The court also noted that it had an electronic docket. The trial court thus upheld "the dismissal of Plaintiff's case for his failure to appear at Trial."

{¶ 19} Turning to plaintiffs' objections as to the dismissals, the trial court stated,

> In light of the prevailing case law that favors a dismissal without prejudice, the objection to the fact that that dismissal was with prejudice is well-taken. The dismissal of Plaintiff's claims should have

been without prejudice. The Magistrate's decision is modified to reflect the fact that the dismissal of Plaintiff's case is *without prejudice.*

Plaintiff also objects to the language concerning the dismissal of Defendant's counterclaims against the entity Foster EM Family Trust who was added as a party-plaintiff in Plaintiff's Amended Complaint. * * * A review of the docket reveals that Defendants' counterclaims were asserted as to Erol Foster only. After Plaintiff amended his complaint to name Foster EM Family Trust as a new party-plaintiff, Defendants did not restate their counterclaims against the new Plaintiff. Furthermore, when Defendants had the opportunity to present evidence at trial against Foster EM Family Trust, they failed to do so.

(Emphasis sic.) As a result, the trial court sustained plaintiffs' objection and dismissed Benson's counterclaims against Foster EM Family Trust with prejudice.

{¶ 20} Finally, as to plaintiffs' objections to the magistrate's factual findings, the trial court first noted that plaintiffs "did not attach any evidence to [their] objections from which the Court might conclude that the Magistrate's factual findings were indeed 'against the manifest weight of the evidence.'" The court went on to state, "Plaintiffs' Objections included an affidavit from Plaintiff Erol Foster which avers only that he had no notice of the trial on September 14. The affidavit from the Plaintiff does not include any allegations challenging the factual matters used by the Court to come to its ruling." The trial court also stated that even if it "were to construe Plaintiffs' Objections as a Motion for Relief, Civil Rule 60(B) has the same requirements for the type of evidence that must be presented to the Court when a party challenges factual findings." The trial court found that plaintiffs' failure to attach factual material in support did not comply with Civ.R. 60(B). The court therefore overruled the plaintiffs' factual objections.

{¶ 21} On June 14, plaintiffs filed a motion to stay execution and to strike "Defendant's 'Garnishment Other than Personal Earnings' of 6/4/2018, and, the Judgment Entry/Notice of this Court of on or about 6/13/2018." On July 2, 2018, the trial court issued a journal entry stating that granting plaintiffs' motion for a stay of execution was "contingent on plaintiffs providing a supersedeas bond of $8,000 plus court costs" and that "the stay will take effect when the bond is approved by the court." The docket does not reflect whether plaintiffs ever provided the bond and whether the trial court actually granted the stay.

{¶ 22} Plaintiffs also contemporaneously filed a notice of appeal from the court's June 1, 2018 judgment entry.

{¶ 23} On January 4, 2019, we remanded the case to the trial court under App.R. 9(E), finding that "[a]lthough the trial court adopted the magistrate's report, it failed to enter a separate judgment stating the relief to be afforded." On remand, the trial court granted the following judgment:

> On Defendants' counterclaims against Plaintiff Erol Foster, the Court grants judgment to Defendants against Plaintiff Erol Foster in the amount of $8000 plus court costs with interest from the date of judgment.
>
> On Defendants' counterclaims against Plaintiff Erol Foster Family Trust, the Court dismisses those counterclaims with prejudice.
>
> On Plaintiff's claims against Defendants, the Court dismisses those claims with prejudice.

{¶ 24} It is from this judgment that Foster now appeals.

## II.    Law and Analysis

### A.    Due Process

{¶ 25} In Foster's first assignment of error, he argues that the trial court denied him his procedural due process rights by (1) failing to provide plaintiffs or their counsel notice of the September 14 hearing, (2) proceeding with the hearing without plaintiffs, and (3) failing to "make any findings as to service of notice of hearing."

### 1. Notice

{¶ 26} Foster first argues that he, the Foster EM Family Trust, and his counsel did not receive notice of the September 14 hearing before the magistrate.

{¶ 27} Foremost, "[t]he power to dismiss for lack of prosecution is within the sound discretion of the trial court, and appellate review is confined solely to whether the trial court abused that discretion." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437, N.E.2d 1199 (1982).  In *Pembaur*, the Ohio Supreme Court stated, "Pursuant to Civ.R. 41(B)(1), it is not an abuse of discretion for the trial court to dismiss an action, with prejudice, for lack of prosecution when a plaintiff voluntarily fails to appear at a hearing, without explanation, when the court has directed him to be present and his location is unknown." *Id.* at syllabus.

{¶ 28} In this case, the trial court's docket reflects that the trial court scheduled the September 14 hearing on August 9, 2017.  Further, the trial court's August 11, 2017 judgment entry — which set the case for trial on September 14 — states that a copy of the entry was "sent by regular U.S. mail to parties/counsel on

8/10/17." Further, on March 3, 2017, the trial court issued a journal entry warning that "[p]ursuant to Ohio Rule of Civil Procedure 41(B), failure of a party or counsel to attend may result in dismissal of that party's claims[.]"

> Notice shall be deemed to have been provided once the clerk has served notice of the entry and made the appropriate notation on the docket. *Atkinson* v. *Grumman Ohio Corporation* (1988), 37 Ohio St.3d 80, paragraph four of syllabus. Moreover, the validity of the judgment is not affected by a party's failure to receive such notice. *Id.* There is also a presumption of proper service in cases where the Civil Rules on service are followed. *Grant v. Ivy* (1980), 69 Ohio App.2d 40, 42. However, this presumption may be rebutted by sufficient evidence. *Id.*

*Martin v. Manning*, 8th Dist. Cuyahoga No. 62039, 1991 Ohio App. LEXIS 5763, 1-2 (Dec. 5, 1991). "[N]otice to an attorney may be imputed to the client." *State v. Hysell*, 4th Dist. Meigs No. 95 A 4, 1995 Ohio App. LEXIS 4408, 7 (Sept. 27, 1995).

{¶ 29} In an attempt to rebut the presumption of service, Foster points to affidavits from him, the trust itself, and the parties' attorney, which were attached to their objections to the magistrate's decision. Plaintiffs' attorney's affidavit states that he "did not or [does] not recall receiving a notice of said hearing."

{¶ 30} However, "a party's self-serving statement that he did not receive service is generally insufficient to rebut the presumption of service." *Castanias v. Castanias*, 12th Dist. Warren No. CA2009-11-152, 2010-Ohio-4300, ¶ 11. Therefore, plaintiffs' attorney's claim that he does not remember receiving notice is insufficient to rebut the presumption of service. Because the docket reflects that plaintiffs and/or their attorney received notice of the September 14 hearing, we presume that service was proper and find that the trial court did not abuse its discretion.

**2. Plaintiffs' Absence at Hearing**

{¶ 31} Foster next argues that the trial court abused its discretion by proceeding to trial in plaintiffs' absence. However, as discussed above, we find no abuse of discretion with the trial court proceeding without plaintiffs.

**3. Findings of Service of Notice**

{¶ 32} Third, Foster argues that the magistrate "failed to make any findings as to service of notice of hearing[,]" stating that the decision only said that "Plaintiffs failed to appear" and failed to state how or whether plaintiffs were served. Foster, however, fails to cite any support establishing that a magistrate must make factual findings related to service of notice. Further, "[a] court speaks through its docket and journal entries." *State v. Deal*, 8th Dist. Cuyahoga No. 88669, 2007-Ohio-5943, ¶ 54, citing *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024. By stating that "plaintiffs failed to appear," the magistrate impliedly found, based on evidence in the docket, that plaintiffs received service, and the trial court's docket confirms such a finding.

{¶ 33} Accordingly, we overrule Foster's first assignment of error.

**B. Failure to Record**

{¶ 34} In Foster's second assignment of error, he argues that the trial court "erred in failing to record the proceedings before the magistrate (hearing of 09/14/2017)."

{¶ 35} Civ.R. 53(D)(7) requires that the proceedings before a magistrate be recorded in accordance with the procedures established by the court. Rule 3.08 of the Cleveland Housing Court's rules, however, states in relevant part:

> (A) Except where required by law, the Court does not utilize a court reporter to transcribe proceedings in civil matters.
>
> (B) Any party or his representative may retain the service of a private reporter to keep a verbatim record of any scheduled hearing. * * *
>
> (C) An "audio only" digital recording is made of eviction hearings. Audio only digital recordings of other hearings also *may be* made.

(Emphasis added.)

{¶ 36} The September 14 hearing was not an eviction hearing, particularly because the trial court dismissed plaintiffs' eviction action based on plaintiffs' absence and failure to prosecute their claims. Instead, the hearing only concerned Benson's counterclaims against Foster. There is nothing from the record to suggest that any party retained the service of a private reporter or that the trial court required the hearing to be recorded. Therefore, pursuant to the procedures established in the Cleveland Municipal Court, it was plaintiffs' responsibility to retain a private court reporter if they desired one, not the court's, and the trial court did not err in not recording the proceedings.

{¶ 37} Accordingly, we overrule Foster's second assignment of error.

## C. Manifest Weight and Sufficiency of the Evidence

{¶ 38} In Foster's third, fourth, fifth, sixth, seventh, ninth, tenth, and eleventh assignments of error, he argues that the trial court's judgment was supported by insufficient evidence and was against the manifest weight of the evidence.

{¶ 39} It is well settled that "an appellant bears the burden of providing the reviewing court with a transcript of the proceedings to demonstrate any claimed errors." *State v. Soverns*, 8th Dist. Cuyahoga No. 101185, 2014-Ohio-4094, ¶ 6, citing *State v. Blashaw*, 8th Dist. Cuyahoga No. 98719, 2012-Ohio-6011. "'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and, thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'" *State v. Simmons*, 8th Dist. Cuyahoga No. 100638, 2014-Ohio-3038, ¶ 14, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980). Further, "[i]f no recording of the proceedings was made, * * * the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." App.R. 9(C).

{¶ 40} Here, Foster challenges the sufficiency and manifest weight of the evidence presented at the September 14 hearing. Without a transcript or statement of the evidence or proceedings, however, we have no basis upon which to analyze his assignments of error that concern factual disputes. *Fennell v. DeMichiei*, 8th Dist.

Cuyahoga No. 106966, 2019-Ohio-252, ¶ 11 ("[B]ecause Fennell did not file a transcript of either the August 2017 or February 2018 hearings, we are unable to review her arguments to the extent they relate to factual disputes."). Instead, we are left with the trial court's factual findings. Accordingly, we must presume regularity of the lower court's proceedings and affirm the trial court's judgment. *State v. Williams*, 8th Dist. Cuyahoga No. 101806, 2015-Ohio-881, ¶ 13.

{¶ 41} Accordingly, we overrule Foster's third, fourth, fifth, sixth, seventh, ninth, tenth, and eleventh assignments of error.

### D. Trial Court's Award to "Defendants"

{¶ 42} In Foster's eighth assignment of error, he argues that the trial court erred "in referring to 'Defendant/Appellee(s)s' [sic] in the plural" and "arbitrarily awarding judgment to both Defendant/Appellees[.]" He also argues that the trial court erred in awarding damages to defendants "for all property, regardless of if or whether it belonged to [Benson or Thomas] * * * or was jointly owned."

{¶ 43} We disagree with Foster that the trial court erred in awarding damages to Benson without finding whether the property was jointly owned. At the September 14 hearing, Benson provided the trial court with a list of property that she lost or was destroyed by Foster's actions in support of her counterclaim, which was submitted and received by the trial court as an exhibit. Further, plaintiffs did not attend the hearing, let alone provide evidence suggesting that Benson did not own any of the property that she included in her list, cross-examine Benson, or challenge the amount that the trial court attributed to the property.

{¶ 44} Nevertheless, a review of the record shows that Benson was the only defendant to file a counterclaim against Foster. Therefore, the trial court's judgment awarding damages to both Benson and Thomas is incorrect and should only award damages to Benson. While the trial court's error is clerical in nature and such an error can typically be fixed via a nunc pro tunc entry, that type of entry "is restricted to placing upon the record evidence of judicial action which has been actually taken" and "it can be exercised only to supply omissions in the exercise of functions that are clerical merely." *Jacks v. Adamson*, 56 Ohio St. 397, 402, 47 N.E. 48 (1897). "The function of nunc pro tunc is not to change, modify, or correct erroneous judgments, but merely to have the record speak the truth." *Ruby v. Wolf*, 39 Ohio App. 144, 10 Ohio Law Abs. 79, 177 N.E. 240 (8th Dist.1931). Without a transcript of the September 14th hearing, we are unable to discern whether the trial court correctly awarded damages only to Benson at the hearing and are left with the trial court's erroneous award of damages to Thomas. Therefore, we modify the trial court's judgment entry and remand with instructions for the trial court to issue a journal entry that only awards Benson $8,000 in damages and omits an award to Thomas.

{¶ 45} Accordingly, we sustain in part Foster's eighth assignment of error to the extent that the trial court's judgment entry should reflect that it only awarded damages to Benson, not Thomas, but overrule the remaining arguments.

### E. Damages

{¶ 46} In Foster's twelfth assignment of error, he argues that the trial court erred "in failing to assign a dollar amount of damages to the alleged tort of

conversion and/or to itemize damages therefor." Foster's argument in support of this assignment of error is one sentence long and fails to elaborate on the point he attempts to make. Further, the trial court's January 9, 2018 judgment entry specifically states that it granted defendants damages "in the amount of "$8,000 plus court costs with interest[.]" We are unable to discern what Foster alleges is deficient with that award.

{¶ 47} Accordingly, we overrule Foster's twelfth assignment of error.

{¶ 48} Judgment affirmed in part, modified in part, and remanded for the trial court to issue a journal entry only awarding Benson $8,000 in damages and omitting an award of damages to Thomas.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
KATHLEEN ANN KEOUGH, J., CONCUR